Good morning. May it please the court. My name is Ariana Freeman and I represent Mark Harris. And with the court's permission, I would like to reserve three minutes for rebuttal. We are here today because the Supreme Court struck down the Armed Career Criminal Act's residual clause, a broad provision under which numerous offenses were deemed violent felonies. Now this court must consider the much narrower elements clause. Under that clause, none of Mr. Harris' robbery or assault convictions is categorically a violent felony. With regard to the recklessness issue, I adopt the arguments of Amiki and Santiago, and I begin by addressing Pennsylvania aggravated assault. In Mayo, this court correctly held that 2702A1 of Pennsylvania's statute does not have an element of violent force for two reasons. One, because Pennsylvania's appellate courts have held that the offense does not require any force. And two, because Pennsylvania applies this offense to crimes of omission, which do not require violent force. Section 2702A1, as applied in Pennsylvania courts, is categorically overbroad. No legal imagination is required to reach that conclusion. The en banc court should decline the government's request to overturn last year's well-reasoned decision in Mayo. There has been no change in governing authority since this court denied the petition for en banc rehearing in Mayo. And the Rule 28J letter that the government filed a few days ago simply reiterates, with the Mayo court already addressed, that other courts of appeals have improperly conflated omission with the use of violent force. Turning to first-degree robbery, the divisibility analysis mandated by Mathis shows that subsections 1 through 3 of the robbery statute set forth alternative means of committing an indivisible offense. The model jury instructions describe the three subsections as alternative ways of satisfying a single aggravation element. And in Commonwealth v. Prostesimo, the Pennsylvania Supreme Court approved of the model jury instructions. Additionally, there are numerous examples of first-degree robbery convictions requiring no jury unanimity and no defendant admission as to any one of the three subsections. If there remains any uncertainty about this being an indivisible offense, Mathis reminds us that Taylor's demand for certainty requires a ruling in the defendant's favor. Regardless of divisibility, the Shepard documents from Mr. Harris's 1994 first-degree robbery conviction do not show which of the three subsections was the basis for his conviction. And for that reason, this court must address whether the least culpable conduct penalized by subsections 1 through 3 has an element of violent force. It does not. The plain language of subsection 3 covers non-forcible offenses. This is so plain that the government conceded the issue in this very case and in numerous other cases. But the government has since changed its position, and it now ties itself in knots, arguing that subsection 3 must have an element of force. It argues that it has never seen subsection 3 applied to non-forcible robberies. But this court has held that when the language of the statute is plainly broader than the federal requirements, a party does not need to identify an overbroad prosecution. That is the correct interpretation of Duenas-Alvarez and Moncrieff, which do not require a realistic probability inquiry in every case. Subsection 3 cannot be treated as if it is narrower than it plainly is. Finally, none of Mr. Harris's first-degree or second-degree robbery convictions is categorically a violent felony because of the aberrational way that Pennsylvania treats its robbery statute. In Pennsylvania, a conviction for any degree of robbery requires only sufficient force to separate the victim from the property plus the victim's awareness of the taking. This is known as snatching, and it does not require force sufficient to overcome the victim's resistance. It is one step removed from the struggle the court addressed in Stokeling. It falls short of violent force, as defined by Johnson 2010 and Stokeling, because it requires less force than common-law robbery. Commonwealth v. Brown and Commonwealth v. Bedell established that snatching suffices for Pennsylvania third-degree robbery, and Commonwealth v. Rice shows that snatching suffices even for first-degree robbery if serious bodily injury results from the defendant's culpable act. It follows that Pennsylvania would apply the same principle to second-degree robbery where snatching results in bodily injury. Ms. Freeman, you adverted generally to Pennsylvania case law. You did not specifically mention Thomas, but of course your papers have discussed Thomas, all the papers in the Harris matter have done so. If I understand your position, it is that the Thomas case, which is a superior court case, signifies that neglect or omission can qualify as an aggravated assault, and that first-degree aggravated assault is therefore, but not necessarily therefore, require even de minimis force. Is that a fair characterization of your argument? How can you square that position with the fact that Pennsylvania specifically defines first-degree ag assault as a crime of violence? It's in Title 42. I think the parties have made clear that when the state describes something as a crime of violence, that is a term of art that is not entitled to deference by federal courts. The court was clear about that, I think, in Johnson 2010 when it referred the parties, the defendant in that case submitted that the state's treatment of a statute and the state's declaration that something did not constitute force was binding on the Supreme Court. Of course, active determinations are matters of federal law, I understand, but how can an act that involves no force whatsoever also constitute an act of violence? Because the result of the offense is that someone is injured, and what's happening in Pennsylvania and perhaps in other jurisdictions is that the court is concerned with the ultimate result, not the actual use or employment of force by the defendant. Why doesn't Castleman take us the rest of the way there? As long as there's the inclusion of the causing of physical injury that necessarily entails the use of force, as it's understood in federal terms, as you point out, we are looking to the federal meaning, a federal term of art also of use of force as it's appearing in the various statutes and guidelines that issue. So why doesn't, maybe it's a difference in nomenclature, and Pennsylvania is using the term causing physical injury, but if we know that that means use of physical force, why isn't that sufficient to not exceed the bounds of the federal definition? Well, one is Castleman made that declaration specifically with regard to domestic violence offenses and went after its discussion of how broadly encompassing common law force was. That does not apply here. The court has been very clear in Johnson 2010 in Stokely that something more is required. And here we have examples. We've seen not only in Commonwealth v. Thomas, but also in Commonwealth v. Taylor, that it is possible for bodily injury to result and for that to be a culpable act where the defendant does not employ any force. And Chief Judge Smith mentioned that the Superior Court decided Thomas, and you may note that the Taylor decision is an unpublished decision. But again, you know, when Duenas Alvarez and Moncrieff ask for examples, they say show me a case. They don't say show me a published opinion. They say you can even show me your own case, an example where there's an overbroad prosecution. We have at least two of those in Pennsylvania, showing that there's an overbroad prosecution of this aggravated assault statute to cases and circumstances that do not require violent physical force as defined. Do we have to even get there, though? I mean, there's, if I'm not mistaken, Mr. Harris would have three qualifying predicate offenses. If we were to, even if we were to agree with you that his April 1993 robbery offense wasn't a qualifying one, there's the May 16th first degree robbery, there's the May 21st first degree robbery, and then there's the serious drug crime he conceded. So if we were to decide that those three predicate acts were sufficiently proven on the record, we would never get to this aggravated assault question, would we? That's correct, Your Honor. But I submit to you that neither of the first degree robbery offenses can count because the offense is indivisible and because subsection 3 is so plainly overbroad. We've said it's divisible, though, haven't we? You have, but you said that, respectfully, Your Honor, before Mathis gave additional guidance about the steps that are required in conducting the divisibility analysis. In Peppers, which came after Mathis, we reaffirmed and said it's divisible, didn't we? The court did refer back to Blair in Peppers, but again, well... Post Mathis. It was post Mathis, but it didn't conduct any of the Mathis analysis, which is looking at how the state treats its offenses. And here we have the state treating the offense as an indivisible offense. We even have the origins of the offense in the model penal code stating that that is an indivisible offense with three different variations of how you can prove the aggravation element. There are two elements, and the model jury instructions are very clear here. There are two elements, the aggravation element, which is satisfied by either subsection 1, 2, or 3, and the theft element. That's it. Mathis and Johnson 2010, a number of cases, and the Supreme Court has said the state is allowed to decide what the elements of its offenses are. And we can't move past that. It would at least have to give this court pause enough to apply Taylor's demand for certainty to say that you cannot say with certainty that it is divisible, even if you think that one of those three subsections is a violent felony. We came back to this in McCants, and while it's vacated and not presidential anymore, why should we find McCants unpersuasive? McCants analyzed the New Jersey statute, which I realize is very similar, but Mathis says we have to look at how the state interprets its own statute. Pennsylvania interprets its own statute as an indivisible one. Mathis says that is an important consideration about whether the proof beyond a reasonable doubt, et cetera. I'm not sure it says that that is the sole witness test here. Respectfully, Your Honor, I would say that it says it is the primary consideration. If the state decides, if state law decides the question, that's the end of the inquiry. But how do we tell how state law decides the question? There are a number of factors, including how the disjunctive list is structured. Mathis suggested are these different structures that are all being burglarized or different weapons? Are they species of a genus? And so those all cast some light on how the state understands it. You may answer the question. Thank you. We can look to the state court opinions. Well, one, we can look to the jury instructions. And this court has done that recently in Steiner and in several other cases. We can see in Commonwealth v. Presto Simo that the state court said, approved of a jury instruction that closely tracked the model jury instruction, which says that those three subsections are part of one element. And so that's the Pennsylvania highest court saying that this is one element. And ultimately, we've seen the prosecutions. If it were required, if jury unanimity were required, then we would see that. And perhaps there might be we're seeing that again and again. The parties are all submitting to this court that we're asking you to address this divisibility issue because so often, including in Mr. Harris's own case, people are convicted of first degree robbery without any specification. And that shows that no unanimity is required, even when the issue is presented to a jury. We'll have you back. Thank you. Thank you. Ms. Osmer. Good morning, Your Honor. May it please the court. Robert Osmer on behalf of the government. Thank you for the honor of appearing before the in-bank court. The court has observed our criticism of the categorical approach. And, of course, I'm not going to belabor that. It's in our papers. It is a very strange sentencing doctrine in which we spend the morning here not talking about the violent acts that Mr. Harris committed. And instead, we are talking about whether other people could violate the same statutes that he happened to violate and do it in a less violent manner than he did. This is strange stuff. But we are required to follow it. And thankfully, the Supreme Court has placed limits on this that do drive the answer here. One very important limit is this notion of not using legal imagination, not just coming up with any hypothetical we can to say that a statute can be violated in a nonviolent way. And the second, and Judge Jordan has alluded to this in his questions. I know they're questions, and I'm going to state it as my position, that you don't interpret the statute in a way that simply negates what Congress obviously meant to do. And it's not just the recent Stoeckling decision. The Supreme Court recently said that in the Quarles decision regarding burglary, in which the Supreme Court said we're not going to define burglary in a way that will wipe out ACCA as to burglary, a term that's expressly used in the statute. And it's those principles that drive the answer here. With regard to aggravated assault in Pennsylvania, a notoriously violent crime, which the state court said is essentially murder in which for some reason a death does not occur, we're being told that no one in Pennsylvania who commits aggravated assault can be subject to ACCA because of one intermediate state court appellate decision in which a mother starved her four-year-old child to death. And we're told that because of that case, aggravated assault can be done without force and through an omission. With all respect, the Mayo decision was incorrect on this, and we urge this court to reverse that. This court was not served well by our briefing in that case, and I hope it's served better by our briefing in the Harris matter. Thomas involved the use of force to confine and starve this child. And where we take our stand, there is no case in Pennsylvania in which a pure omission was held sufficient to convict someone of first-degree aggravated assault. And because of that, we're left only with legal imagination, which the Supreme Court says is insufficient. With respect to robbery, I think it's actually a bit easier. It would be just as devastating to say that no one who commits robbery in Pennsylvania is subject to ACCA or the career offender provision, but it's not the case. With regard to first-degree robbery, the easiest answer is just looking at subsection 3. That's what this is all about. Subsection 3, on its face, does not look violent. You simply threaten to commit a first- or second-degree felony. But we have the Pennsylvania Supreme Court's decision in Brown. This is not an intermediate case. This is not a question of conduct. This is an express statement of the Supreme Court of Pennsylvania that serious bodily injury is an element of first-degree robbery, and that includes subsections 1, 2, and 3. And that's why no one has been able to identify any case in Pennsylvania in which someone was convicted under subsection 3 for, say, threatening to counterfeit money or whatever some second-degree felony could be. This statute would, in fact, be nonsensical if you could commit a robbery without the threat of some type of bodily injury, and the Pennsylvania Supreme Court tells us that is not the case. I will address the visibility of it if the Court's interested. This Court has correctly held that the robbery statute is divisible by subsection, and I think the recent McCants decision, Judge Hardiman's decision, is very helpful in focusing exactly how to follow that and how to apply the divisibility analysis. But the simple fact is first-degree robbery is a crime of violence in all its forms, and so is second-degree, which expressly requires bodily injury. My very good friend Ms. Freeman says, no, it can be just snatching. Well, no, it can't be snatching. The statute itself says bodily injury or serious bodily injury. You can snatch, but you have to have that element of threatening or causing bodily injury, which the Supreme Court has instructed equals physical force under ACCA. So with respect to both aggravated assault and robbery, it's essential if there is to be an Armed Career Criminal Act applied in the courts of Pennsylvania, the federal courts in Pennsylvania, that these qualify, and they do, and I welcome your questions. Mr. Zanzibar, let's go back to Commonwealth v. Thomas. Is it fair to characterize what happened there as merely an omission? It is not, Your Honor. The important thing there, and I'm glad you asked the question, is we have to look at the conduct, what we're told by the Supreme Court, what the categorical approach is, is you look at the least of the acts criminalized by the statute. And one way to find that is by looking at cases and seeing what acts. But here we're looking at conduct. What's weird about this is we're not looking at the conduct in our case. We're looking at the conduct in somebody else's case. And what the Supreme Court has said in Gonzalez and Esquivel-Quintana and other cases is we look at the conduct, and then we say, did it involve the use of force as defined by federal law? The conduct in Thomas, in one of the more detailed and gruesome opinions that I've ever read, is all about the use of force. This child was confined, was forced to sit in the bathroom for 12 hours, was never seen. There were dozens of witnesses who had never seen this child and had seen all the other children because this child was confined. The child was compelled to eat insulation and fibers, obviously because that's all there was in the room that he was confined in. And then finally, when the court, at the end of this very detailed opinion, wraps it up, it says given the evidence enumerated above, we find there was more than sufficient evidence to show that mother starved QT, failed to obtain medical assistance for him, and forced QT to live in filthy and inhumane conditions. If that's not the use of physical force, we're in a bad place. Well, we're in a bad place perhaps because of the categorical approach, but in Thomas and in the briefing in Mayo, the argument was not made, look, this was false imprisonment. The argument was made and made explicitly that the lack of force could be forced because it resulted in death. That was what was presented to us. Now you guys, you know, you've made your fondness for Mayo clear in your briefing and here at the podium. But the reality is the Supreme, excuse me, the Superior Court of the Commonwealth of Pennsylvania said, as you've just described it, the first two things out of its mouth are in the negative. You can think that's odd, but let me ask it to you this way. Imagine it wasn't a four-year-old. Imagine it was a four-month-old. Do you think the result would have been any different? I'm not sure. I'm not sure. You don't think that if she'd starved her four-month-old, an individual who couldn't have done anything, you wouldn't have to confine it, be too young to even crawl. Do you think the result would have been different? I would make the argument that that is also the use of force, that the withholding of food. Then what you're saying is withholding and doing nothing is the use of force. In the end, the government's position is, as you're just stating it now, and has to be, doing nothing is the application of force. How can that, as a logical matter, I mean, as a humane matter, as a sensible, as a logical matter, with you 100%, but we're not in the realm of logic. We're in the realm of the categorical approach. In that crazy world. That's got to be quoted. In that world. As well it should be. In that world, how can no force equal force? Two answers to that, Your Honor. First, several circuits have said, most recently the 11th, that withholding food, when a person has an obligation to provide food and withholds it, that that is an act. And what the Supreme Court says in Castleman is that. Please don't tell me that other people have said no force is force. I'm asking you to work with the language and the logic. How can no force be force? So an important thing here under Pennsylvania law, and I think most states, is that a voluntary act is required for criminal conduct. There's a Pennsylvania statute on that. And the only time, such as in Thomas, that somebody can be convicted for not engaging in a voluntary act is where the person has an obligation to act. Sure, we're not talking about not acting. We're not talking about whether not acting when you're supposed to act can be criminal. We're talking about whether not acting is equal to force. That's the question that's in front of me. The simple answer is that withholding food is a physical act. So any physical act is the application of force. Doesn't that prove too much? But I have to say one other really important thing, Your Honor, which is that we're getting into legal imagination because what the Supreme Court requires is that. . . They convicted her for starving a 4-year-old. It takes a leap of imagination to think they wouldn't convict her for starving a 4-month-old. We have to look at the actual cases. And the only case we have. . . And what we're doing here, again, is we're negating the application of ACCA to this vital statute based on. . . Now you're on to something significant. But do we even have to get to Mayo here? If we agree with you that this is a divisible statute, the robbery one, then it's just dictative to get into the aggravated assault, isn't it? Correct. You can decide this case based on robbery. However, we're going to be back because the aggravated assault is an issue. And that's why we're respectfully asking this court to address it now that we've all gathered here to do that. We'll be back and we'll be here. I hope so, Your Honor. On Mayo, did the Stoeckling decision abrogate that in any way? I think it informs it quite a bit, Your Honor. I think that Stoeckling makes clear the very minimal amount of force that's required under the Elements Clause. It's simply force that is sufficient to overcome someone's resistance. It can be a slap, a pinch, the other words that were used. If that's the case, then again, what that mother did in Thomas certainly qualifies. I think Stoeckling is a very good reason to reevaluate Mayo. Stoeckling, the quotes that you just provided from Stoeckling require or recite acts. You don't see a distinction between what was recited in Stoeckling and Thomas, hence Mayo. Again, we're looking at the actual facts of Thomas. She did far more to that child than a pinch or a slap or the other things. It was actual use of force. And what's very important here is that if you're going to negate ACCA based on a single outlier case, maybe you can do that, but Thomas isn't it. It doesn't get you there. The point is not that it's a single outlier. It's not all that Pennsylvania has to provide, right? Well, it is how we're supposed to apply the categorical approach. And these days we do have 50 or more years of precedent regarding all of these major statutes. We can assume that if the state has not applied it yet, it probably is not. We have a clear statute for aggravated assault that says you have to knowingly, intentionally, recklessly cause serious bodily injury. We have no instance in decades of thousands of prosecutions of that being done without the use of force as defined by federal law. For now, that's enough. Maybe a year from now the Pennsylvania Supreme Court says that we're wrong and we revisit it. But right now it's very clear that Thomas is the only outlier case and it doesn't get you home. It's not the only one. There's an unreported decision. But be that as it may, it sounds like your argument is you should pay attention because Stoeckling pays attention to what the general effect is, that if the general effect is to undermine the application of ACCO where it should generally apply, then you shouldn't let that happen. Is that a message from Stoeckling? And if it is a message from Stoeckling, doesn't that change the categorical approach in a meaningful way? It does. And it's a message from Quarles as well that I cited. It is very important to look at the purpose here. If Congress's purpose of the Armed Career Criminal Act was not to look at people who commit robbery and commit aggravated assault and say, don't carry a gun, then I don't know what its purpose was. It was clearly targeted at these very statutes that we're dealing with in this case. And so, yes, it's – But if you look at the purpose – I want you to read a few, but your light's going to come on in a second and I'll be silenced forever. But looking at the purpose, we also have to look at the purpose of 922G1. And I have a hard time figuring out how the purpose of that and the entire discussion of domestic violence, weapons, disenfranchisement, with differing language, similar as your colleague said, but different, fits within the ACCA or the sentencing guidelines, where the purpose, it seems to me, is different if we had her – back to Judge Becker's language about what ACCA was intended to do, who it's intended to sweep within it. I agree with you the categorical approach gets us all kinds of problems, but that's what we're stuck with. It seems like we're ending up with a very, very broad net that sweeps within it people that may not have been intended by Congress to be included under the incredibly enhanced sentencing provisions of the guidelines or ACCA if we focus on the purpose of 922G1. So I'm not sure how focusing on that purpose, and especially if we bring into that against the person of another, which dropped out of this entire discussion, focusing on force, it seems to me to be a very, very strange fit. Well, you may take even more than the time Judge McKee has left you to answer that. He's always got my back. Thank you, sir. These statutes were expressly directed at this type of conduct. My friend, Mr. Coyne, has ably explained why reckless conduct is purposeful, volitional conduct that Congress would mean to target. All parts of 922G mean to keep guns out of the hands of particularly dangerous people who Congress has deemed should not have guns. The only dangers within one confine, the domestic relationship. Outside of that, the statute doesn't reach them. That's true for number nine, but for number one, of course, which is what we're dealing with here, it's someone who's previously committed a felony. And what the Armed Career Criminal Act says is someone who's not just committed a felony, but three prior felonies that were violent felonies or drug trafficking offenses. So Congress couldn't be more clear. And the problem here is that if you start knocking out recklessness and aggravated assault and robbery and these fundamental statutes, you're not left with very much. This notion that the use language is somehow different is also rejected by Castleman. Castleman was the same situation. The Supreme Court decided in Castleman that the indirect use of force is the same as the direct use of force. Many courts before that had held differently. And then we heard the same argument right after Castleman, which is, well, that's just the domestic violence statute. That shouldn't apply to ACCA. And every court rejected it. I was way too lenient. And I took advantage. Thank you, Your Honor. Never again. Thank you. I want to touch on three points that came up in your discussion with Mr. Zausner. First is that Mr. Zausner said that the Supreme Court has held that causing serious bodily injury equals violent force. That is simply not true.  direct use of force. Force exerted through concrete bodies that is capable of causing pain or injury is violent force. Do you know what that means? What does that mean? How do you exert force as in a laser unless it's exerted through, you've got to somehow communicate the force. You've got to transmit it. How do you do that unless you go through concrete bodies? I have no idea what that means. Well, Your Honor, unfortunately I can't really help with that. But I can tell you what it doesn't mean. And what it doesn't mean is when someone culpably, for instance, verbally encourages someone to harm herself, that is a culpable act that could result in serious bodily injury. But that is not the use of force because that is not force by and through concrete bodies. So there are numerous examples of culpable act crimes that result in serious bodily injury or the lesser degree of bodily injury that do not So force really seems to me, I don't want to get sidetracked, you're really talking about energy and it's manifesting itself by the use of the word force. And that's where I'm troubled. We picked it up and I think our mayoral opinion picks up that language from Johnson about force being transmitted through some concrete mechanism. And, again, I'm troubled by that because without energy, there'd not be any action to begin with. It seems totally circular to me. Well, Your Honor, I think you're correct about the physics of it all. But, ultimately, we are required to look at whether there is a volitional act, something, you know, the affirmative employment of an instrument, as this court mentioned in Chapman, and there is no affirmative act in withholding food and withholding medical care. Ms. Freeman, one thing that seemed to animate the Voisin court was that it would render nugatory the state laws of 35 states. Do we know how many state laws would be rendered nugatory if we accept your position in this case? Well, Your Honor, the only position that I'm taking is about the interpretation of the Pennsylvania statutes. And when the court discussed in Stokeling that it interprets a federal statute in ways that are consistent with congressional purpose, that has been done. The federal statute has been interpreted. We know what force means because Johnson 2010 in Stokeling tells us, the only question here is applying it here to the Pennsylvania statutes. And if the Pennsylvania statutes, because of perhaps the aberrational ways in which they are applied, are overbroad to meet those federal definitions, then that's the end of the inquiry. It doesn't matter because we're not interpreting the federal statute. And I hope I've answered Your Honor's question. Thank you, Ms. Freeman. You have no idea what kind of a Pandora's box you almost opened by invoking the term physics in response to the question from Judge McKee. He happens to love the field. He does. Had you mentioned quantum physics, we'd be here until tomorrow. Thank you very much. Thank you all for your arguments. We will take both cases under advisory.